**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **DVI RECEIVABLES XIV, LLC, et al.,** | : | |
|       **Appellants,** | : | |
|   **vs.** | : | **CIVIL NO. 14-3787** |
| | : | |
| **NATIONAL MEDICAL IMAGING,** | : | |
| **LLC,** | : | |
|       **Appellee.** | : | |

_____

| | | |
|---|---|---|
| | : | |
| **DVI RECEIVABLES XIV, LLC, et al.,** | : | |
|       **Appellants,** | : | |
|   **vs.** | : | **CIVIL NO. 14-3828** |
| | : | |
| **NATIONAL MEDICAL IMAGING,** | : | |
| **HOLDING COMPANY, LLC,** | : | |
|       **Appellee.** | : | |

_____

| | | |
|---|---|---|
| | : | |
| **ASHLAND FUNDING, LLC** | : | |
|       **Appellant,** | : | |
|   **vs.** | : | **CIVIL NO. 14-3969** |
| | : | |
| **NATIONAL MEDICAL IMAGING,** | : | |
| **LLC,** | : | |
|       **Appellee.** | : | |

_____

| | | |
|---|---|---|
| | : | |
| **ASHLAND FUNDING, LLC,** | : | |
|       **Appellant,** | : | |
|   **vs.** | : | **CIVIL NO. 14-3968** |
| | : | |
| **NATIONAL MEDICAL IMAGING,** | : | |
| **HOLDING COMPANY, LLC,** | : | |
|       **Appellee.** | : | |

_____

## <u>MEMORANDUM OPINION</u>

**RUFE, J.**　　　　　　　　　　　　　　　　　　　　**March 24, 2015**

      This case arises out of a complex securitization transaction that has spawned more than a

decade of on-and-off again litigation in several courts, including multiple bankruptcy

proceedings. Presently before the Court are four consolidated appeals from three orders of the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court" or "Eastern District Bankruptcy Court") cross-filed in two related bankruptcy proceedings: 1) the Memorandum Opinion and Order of December 28, 2009, which dismissed the involuntary bankruptcy petitions against Appellees with prejudice (the "Eastern District Bankruptcy Dismissal");[1] 2) the Order of January 6, 2011, that *inter alia*, declined to vacate a stay of the Bankruptcy Court proceedings;[2] and 3) the Order of May 2, 2014, that denied Appellants' motion for reconsideration of the Eastern District Bankruptcy Dismissal (the "Denial of Reconsideration").[3] The Bankruptcy Court entered these orders in both *In re National Imaging Holding Co., LLC*,[4] and *In re National Medical Imaging, LLC*.[5] Appellants DVI Receivables XIV, LLC, DVI Receivables XVI, LLC, DVI Receivables XVII, LLC, DVI Receivables XVIII, LLC, and DVI Receivables XIX, LLC (collectively, "DVI Appellants") filed an appeal from each proceeding, as did Appellant Ashland Funding, LLC ("Ashland"). These four appeals are now before this Court for resolution.

---

[1] Memorandum Opinion, *In re National Medical Imaging, LLC*, no. 08-17351, Doc. No. 183 (Bankr. E.D. Pa. Dec. 28, 2009).

[2] Order, *In re National Medical Imaging, LLC*, No. 08-17351, Doc. No. 225 (E.D. Pa. Jan. 6, 2011).

[3] Order, *In re: National Medical Imaging, LLC*, no. 08-17351, Doc. No. 274 (Bankr E.D. Pa. May 2, 2014). Appellant Ashland Funding's notice of appeal also seeks to appeal from the "Statement in Support of May 2, 2014 Bench and Written Orders Denying Petitioning Creditors' Motions for Reconsideration of my December 28, 2009 Memorandum Opinion and Order," *In re: National Medical Imaging, LLC*, no. 08-17351, Doc. No. 284 (Bankr E.D. Pa. 2014). However, this document is not an appealable order because it merely records the reasoning that supports the Denial of Reconsideration.

[4] No. 08-17351 (Bankr. E.D. Pa). Because the Bankruptcy Court cross-filed its orders, each order has a document number in case no. 08-17351 and case no. 08-17348. The Court employs the number in case no. 08-17351 throughout this opinion for the sake of consistency.

[5] No. 08-17348 (Bankr. E.D. Pa).

## I.    FACTUAL AND PROCEDURAL HISTORY[6]

In 2000, Appellees National Medical Imaging, LLC ("NMI") and National Medical Imaging Holding Company, LLC ("NMI Holding") were affiliated with certain limited partnerships (the "NMI LPs") that operated a series of diagnostic imaging centers.[7] Beginning in November of that year, in order to finance the purchase of medical diagnostic equipment, the NMI LPs entered into master leases and equipment schedules (the "Master Leases") with DVI Financial Services, Inc. ("DVI Financial"). The NMI LPs' obligations under the Master Leases were secured by a limited guaranty executed by Maury Rosenberg, the managing member of NMI and NMI Holding, in his personal capacity and an additional guaranty executed by NMI and NMI Holding.

DVI Financial then transferred the Master Leases to other DVI entities. Certain Master Leases were transferred to DVI Funding, LLC, which held them directly, and the remainder were securitized. Pursuant to various Contribution and Service Agreements, DVI Financial transferred and assigned the Master Leases to be securitized to certain DVI Receivables Corporations (which are not among the Appellants in this case). Pursuant to various Subsequent Contract Transfer Agreements, the DVI Receivables Corporations transferred and assigned their Master Leases and related assets to DVI Appellants. At the same time, DVI Appellants entered into indentures with U.S. Bank, acting as trustee of the transaction, under which notes were issued to investors with the Master Leases serving as collateral.[8] DVI Financial was appointed as servicer for the trustee, U.S. Bank.

---

[6] Unless otherwise noted, all facts are drawn from the parties' Joint Statement of Undisputed Facts to Putative Debtors' Motions to Dismiss Involuntary Cases, *In re National Medical Imaging, LLC*, 08-17351, Doc. No. 83-1 (hereinafter "Joint Statement") (Bankr. E.D. Pa. June 26, 2009),.

[7] Appellees' Br. at 3.

[8] *Id.* at 4.

On August 25, 2003, DVI Financial and related companies filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware. DVI Appellants, however, did not file for bankruptcy. During the bankruptcy, DVI Financial filed an adversary proceeding against NMI, NMI Holding, and Rosenberg alleging that the NMI LPs had defaulted on their obligations under the Master Leases and therefore Rosenberg, NMI, and NMI Holding were required to pay their guaranty obligations. By memorandum opinion and order dated February 3, 2004, United States Bankruptcy Judge Mary F. Walrath dismissed the adversary proceeding for lack of subject matter jurisdiction.[9]

On the same day, the Bankruptcy Court for the District of Delaware also approved a bankruptcy settlement agreement, under which DVI Financial's obligations as servicer for U.S. Bank were transferred to Lyon Financial Services, Inc., a subsidiary of U.S. Bank. Lyon also acted as agent for U.S. Bank in its role as trustee. As servicer and agent, Lyon opened bank accounts in the name of each DVI Appellant, into which Lyon deposited payments collected pursuant to the Master Leases. At the end of each month, Lyon arranged for these funds to be transferred to U.S. Bank as trustee for the investors.

**A.  The First Round of Litigation and the Settlement Agreement**

Starting on December 19, 2003, a Lyon subsidiary, U.S. Bank Portfolio Services, filed 13 lawsuits against the NMI LPs, NMI, NMI Holding, and Rosenberg in the Court of Common Pleas for Bucks County, Pennsylvania, alleging that the NMI LPs had defaulted on their Master Lease obligations and therefore NMI, NMI Holding and Rosenberg were required to pay their guaranty obligations. On March 3, 2005, Appellants DVI Receivables XVII, XVIII, and XIX, together with two other creditors, filed an involuntary Chapter 11 bankruptcy petition against

---

[9] *In re DVI, Inc.*, 305 B.R. 414 (Bankr. D.Del. 2004).

NMI and NMI Holding in the United States Bankruptcy Court for the Eastern District of Pennsylvania.

On August 12, 2005, Rosenberg, NMI, NMI Holding, the NMI LPs and Lyon, acting as successor servicer for DVI Appellants and DVI Funding, entered into a Settlement Agreement in order to resolve their outstanding disputes. Pursuant to the Settlement Agreement, the involuntary bankruptcy petition filed by Appellants DVI Receivables XVII, XVIII, and XIX was dismissed, as was the confession of judgment action filed by a Lyon subsidiary.[10] The Settlement Agreement provides that the NMI LPs' total repayment obligation was $23,881,557. Lyon agreed to restructure the repayment obligations of the NMI LPs under the Master Leases and also executed a release providing that NMI and NMI Holding were released from all claims except those arising under the Settlement Agreement. In return, Rosenberg, and NMI and NMI Holding, were required to execute new guaranties of repayment. Rosenberg executed a limited guaranty of $7,661,945 (the "Rosenberg guaranty").[11] NMI and NMI Holding jointly executed an unconditional continuing guaranty of $15,124,920 (the "NMI guaranty").[12] Pursuant to the guaranties, Rosenberg, NMI, and NMI Holding executed confessions of judgment in favor of Lyon.  On March 2, 2007, DVI Funding sold all of its interests in the Master Leases to Appellant Ashland; Ashland agrees that the interest that it acquired in the Master Leases is subject to the modifications contained in the Settlement Agreement.[13]

---

[10] DVI Appellants' Initial Br. at 14, Eastern District Bankruptcy Dismissal at 8.

[11] Individual Limited Guaranty, *In re National Medical Imaging, LLC*, no. 08-17351, Doc. No. 10-3 (Bankr. E.D. Pa. Dec. 4, 2008).

[12] Unconditional Continuing Guaranty, *In re National Medical Imaging, LLC*, no. 08-17351, Doc. No. 158-2 (Bankr. E.D. Pa. Sept. 4, 2009).

[13] Opening Br. Of Appellant Ashland Funding at 11.

**B. Round Two: Judgment is Confessed, The Involuntary Petitions are Filed and the Rosenberg Bankruptcy is Adjudicated in Florida**

On March 21, 2008, Lyon notified NMI and Rosenberg that the NMI LPs had defaulted on their repayment obligations under the Settlement Agreement. On July 31, 2008, Lyon, acting as agent for the trustee, filed a complaint in confession of judgment against Rosenberg, NMI, and NMI Holding as guarantors of the NMI LPs' repayment obligations in the Bucks County Court of Common Pleas.[14] On November 7, 2008, DVI Funding, despite having no remaining interest in the Master Leases, together with DVI Appellants, filed involuntary bankruptcy petitions against NMI, NMI Holding, and Rosenberg in the United States Bankruptcy Court for the Eastern District of Pennsylvania. Rosenberg then moved to dismiss the involuntary petition against him and to transfer venue to the United States Bankruptcy Court for the Southern District of Florida, where he resides. On January 30, 2009, the Rosenberg bankruptcy proceedings were transferred to the Southern District of Florida (the "Florida Bankruptcy Court").

Following the transfer of venue, the Honorable A. Jay Cristol, then Chief Bankruptcy Judge for the Southern District of Florida, scheduled an evidentiary hearing on Rosenberg's motion to dismiss.[15] The parties subsequently engaged in extensive discovery.[16] On April 7, 2009, the petitioners filed a second amended involuntary petition against Rosenberg, which substituted Ashland for DVI Funding as a petitioning creditor.[17] Rosenberg moved to strike the second amended petition. On April 20, 2009, Judge Cristol held the scheduled evidentiary

---

[14] In *U.S. Bank v. Rosenberg*, a related case before this Court, Rosenberg alleges that the confession of judgment action was improper and seeks to recover damages from U.S. Bank as a result.

[15] *In re Rosenberg*, 414 B.R. 826, 831 (Bankr. S.D. Fla. 2009).

[16] *Id.* at 832.

[17] *Id.*

hearing on the motion to dismiss.[18] Following the hearing, DVI Appellants and Ashland filed a motion for leave to file a third amended involuntary bankruptcy petition.

On August 21, 2009, Judge Cristol issued a memorandum opinion and order dismissing the involuntary bankruptcy petition against Rosenberg (hereinafter "*Rosenberg I*").[19] Judge Cristol reached five alternative holdings: 1) Because there was no guaranty in favor of DVI Appellants or Ashland, none of the Appellants were creditors of Rosenberg; 2) DVI Appellants and Ashland were not the real parties in interest; 3) DVI Appellants were judicially estopped from filing the involuntary bankruptcy petitions because Lyon had claimed that the Rosenberg guaranty was owed to it when filing the confession of judgment in the Bucks County court; 4) Lyon was Rosenberg's only creditor because the Settlement Agreement constituted a novation; and 5) DVI Appellants and Ashland held contingent claims subject to a *bona fide* dispute.[20] Judge Cristol also retained jurisdiction to hear Rosenberg's claim for sanctions for the bad faith filing of an involuntary bankruptcy petition pursuant to 15 U.S.C. § 303(i).[21] *Rosenberg I* did not make any express ruling on the pending motion to strike, although Judge Cristol would later interpret *Rosenberg I* to have dismissed the motion to strike as moot.

### C. The Eastern District Bankruptcy Court Gives Collateral Estoppel Effect to *Rosenberg I*

While the involuntary Rosenberg bankruptcy was pending in Florida, the NMI and NMI Holdings bankruptcies proceeded in the Eastern District of Pennsylvania before the Honorable Richard Fehling. Upon learning of *Rosenberg I*, Judge Fehling conducted an expedited hearing

---

[18] *Id.*

[19] *In re Rosenberg*, 414 B.R. 826 (Bankr. S.D. Fla. 2009).

[20] *Id.* at 840-44.

[21] *Id.* at 849.

on Appellees' then-pending motions to dismiss.[22] Judge Fehling allowed the parties to submit briefs on the issue of the collateral estoppel effect of *Rosenberg I*, and heard oral argument on the issue of the collateral estoppel effect of *Rosenberg I*.[23]

On December 28, 2009, Judge Fehling issued the Eastern District Bankruptcy Dismissal, which dismissed the involuntary bankruptcy petitions against NMI and NMI Holding on the basis of the collateral estoppel effect of *Rosenberg I*. Specifically, Judge Fehling gave collateral estoppel to three of Judge Cristol's alternative holdings: 1) DVI Appellants and Ashland were not real parties in interest; 2) Lyon was the only creditor because the Settlement Agreement constituted a novation; and 3) DVI Appellants were judicially estopped from filing the involuntary bankruptcy petitions.[24] Appellants moved for reconsideration and Judge Fehling stayed the NMI and NMI Holdings case in the Eastern District of Pennsylvania pending resolution of a motion for reconsideration in the Rosenberg case before Judge Cristol in Florida.[25]

On October 7, 2010, Judge Cristol denied Appellants' motion for reconsideration[26] and Appellants subsequently filed notices of appeal to the United States District Court for the Southern District of Florida.[27] On October 15, 2010, Appellees filed a motion to vacate the stay

---

[22] Eastern District Bankruptcy Dismissal at 5.

[23] *Id.*

[24] *Id.* at 20-30.

[25] Statement in Support of May 2, 2014 Bench and Written Orders Denying Petitioning Creditors' Motions for Reconsideration of my December 28, 2009 Memorandum Opinion and Order, *In re: National Medical Imaging, LLC*, no. 08-17351, Doc. No. 284 at 5 (Bankr E.D. Pa. May 13, 2014).

[26] Order Denying Petitioning Creditors' Motion for Rehearing and Granting Motion to Alter or Amend Order Granting Motion to Dismiss Involuntary Chapter 7 Case, *In re Rosenberg*, No. 09-13196, Doc. No. 129 (Bankr. S.D. Fla. 2010).

[27] Notice of Appeal, no. 09-13196, *In re Rosenberg*, Doc. No. 130 (Bankr. S.D. Fla. Oct. 18, 2010).

of proceedings in the Eastern District.[28] On January 6, 2011, the Eastern District Bankruptcy Court ordered that the NMI and NMI Holdings bankruptcies would remain stayed while the Rosenberg bankruptcy was on appeal.[29] Although Appellants filed a notice of appeal from the January 6, 2011 Order, Appellants do not make any argument with regard to this Order, and this Order may now be moot. Thus, the Court will dismiss any appeal from the January 6, 2011 Order as moot.

### D.  The Dismissal of the Rosenberg Bankruptcy is Substantially Affirmed on Appeal

On September 27, 2011, the Honorable K. Michael Moore of the United States District Court for the Southern District of Florida issued a memorandum opinion and order affirming in part and reversing in part Judge Cristol's decision (hereinafter "*Rosenberg II*").[30] *Rosenberg II* held that "[*Rosenberg I*] was thorough, fair, and correct as to all but one discrete issue."[31] The District Court reversed *Rosenberg I*'s determination that Appellants' claims were contingent.[32] *Rosenberg II* expressly declined to reach *Rosenberg I*'s judicial estoppel ruling.[33] Appellants timely appealed *Rosenberg II* to the United States Court of Appeal for the Eleventh Circuit and, on July 6, 2012, the Eleventh Circuit issued a *per curiam* opinion affirming *Rosenberg II* in full (hereinafter "*Rosenberg III*").[34]

---

[28] Order, *In re National Medical Imaging, LLC*, No. 08-17351, Doc. No. 225 at ¶ 24 (E.D. Pa. Jan. 6, 2011).

[29] Order, *In re National Medical Imaging, LLC*, No. 08-17351, Doc. No. 225 (E.D. Pa. Jan. 6, 2011).

[30] Order Affirming in Part and Reversing in Part Bankruptcy Court's Orders, *DVI Receivables XIV, LLC, et al. v. Maury Rosenberg*, No. 10-CIV-24347, Doc. No. 11 (S.D. Fla. Sept. 27, 2011).

[31] *Rosenberg II* at 9.

[32] *Id.* at 13.

[33] *Id.* at 13, n. 7.

[34] *In re Rosenberg*, 472 Fed. App'x 890 (11th Cir. 2012).

While the appeals to the District Court and Eleventh Circuit were pending, Rosenberg pursued his § 303(i) sanctions claim in a separate adversary proceeding before Judge Cristol in the Florida Bankruptcy Court.[35] Ashland and other defendants filed motions to dismiss the adversary proceeding.[36] On March 26, 2012, the Florida Bankruptcy Court held that Ashland was not a petitioning creditor for the purposes of § 303(i) because *Rosenberg I* had dismissed the first amended involuntary petition, to which Ashland was not a party, and dismissed the motion to strike the second amended involuntary petition as moot.[37] The court therefore dismissed Ashland as a party to the adversary proceeding.[38] The § 303(i) proceeding eventually resulted in a jury verdict in Rosenberg's favor, but further recitation of that proceeding is not necessary here.

### E.  The Eastern District Bankruptcy Court Considers *Rosenberg II* and *III* and Denies Reconsideration of its Collateral Estoppel Ruling

Although a motion for reconsideration was filed in the Eastern District Bankruptcy Court in 2010, the motion was not briefed until early 2014. On January 9, 2014, following *Rosenberg II* and *III*, the parties agreed to a briefing schedule.[39] On May 2, 2014, the Bankruptcy Court denied reconsideration and entered the written Denial of Reconsideration.[40] On May 12, 2014, DVI

---

[35] *Maury Rosenberg v. DVI Receivables, XIV, LLC, et al.*, Adv. No. 10-3812 (Bankr. S.D. Fla.).

[36] Memorandum Opinion Granting Mot. of Defs. Ashland Funding, LLC, Robert Brier, and BG Management Services, Inc.'s Motion to Dismiss, *Maury Rosenberg v. DVI Receivables, LLC, et al.*, Adv. No. 10-3812, Doc. No. 168 at 1-2 (Bankr. S.D. Fla. Mar. 26, 2012).

[37] *Id.* at 7.

[38] *Id.* at 11.

[39] Statement in Support at 6.

[40] Order, *In re: National Medical Imaging, LLC*, no. 08-17351, Doc. No. 274 (Bankr. E.D. Pa. May 2, 2014).

Appellants filed notices of appeal to the United States District Court for the Eastern District of Pennsylvania in the NMI and NMI Holdings bankruptcies.[41]

The next day, on May 13, 2014, the Bankruptcy Court entered a statement in support of the Denial of Reconsideration (the "Statement in Support"), setting forth findings of fact and conclusions of law that explain the reasoning behind the Denial of Reconsideration.[42] The Bankruptcy Court held that because *Rosenberg II* did not reach Judge Cristol's judicial estoppel ruling, the judicial estoppel ruling was no longer entitled to collateral estoppel effect.[43] However, the Bankruptcy Court found "no error of law or fact" in the remainder of the Eastern District Bankruptcy Dismissal, and the result did not change because two alternative grounds remained for his ruling, and so reconsideration was denied.[44]

On May 16, 2014, Ashland also filed notices of appeal in the NMI and NMI Holdings bankruptcies.[45] On July 7, 2014, upon consideration of a joint stipulation of the parties, all four appeals were consolidated.[46]

## II.      STANDARD OF REVIEW

Pursuant to 28 U.S.C. 158(a)(1), this Court has jurisdiction to hear appeals from final orders of the bankruptcy court. When reviewing a bankruptcy court order, this Court conducts a

---

[41] Notice of Appeal, *In re National Medical Imaging, LLC*, no. 08-17351, Doc. No. 282 (Bankr. E.D. Pa. May 12, 2014).

[42] Statement in Support of May 2, 2014 Bench and Written Orders Denying Petitioning Creditors' Motions for Reconsideration of my December 28, 2009 Memorandum Opinion and Order, *In re: National Medical Imaging, LLC*, no. 08-17351, Doc. No. 284 (Bankr E.D. Pa. May 13, 2014).

[43] *Id.* at 15.

[44] *Id.* at 1-2.

[45] Notice of Appeal, *In re National Medical Imaging, LLC*, no. 08-17351, Doc. No. 289 (Bankr E.D. Pa.).

[46] Doc. No. 8.

plenary review of any conclusions of law,[47] but reviews discretionary decisions of the bankruptcy court for abuse of discretion.[48] Determinations of collateral estoppel, as questions of law, are generally subject to plenary review.[49] Where reconsideration of a question of law is denied, this Court's review of the denial of reconsideration is plenary; on all other issues this Court reviews the denial of reconsideration for abuse of discretion.[50]

The party claiming the benefit of an estoppel bears the burden of showing that estoppel applies.[51] In order for collateral estoppel to apply, the following requirements must be met:

> (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question.[52]

An additional requirement that "the previous determination was necessary to the decision" is sometimes added.[53] "'Collateral estoppel … has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.'"[54] Because of the risk of erroneously

---

[47] *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992) (citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1981)).

[48] *See In re Mintz*, 434 F.3d 222, 227 (3d Cir. 2006).

[49] *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248 (3d Cir. 2006). There is only one exception to this general rule, which is not at issue in these appeals: when non-mutual offensive collateral estoppel is claimed, the standard of review is abuse of discretion. *Id.*

[50] *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 348 (3d Cir. 1986).

[51] *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000).

[52] *Bd. of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc. - Pension Fund v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992).

[53] *E.g.*, *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995).

[54] *Jean Alexander Cosmetics, Inc.*, 458 F.3d at 253 (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979)) (ellipsis original).

denying parties a chance to be heard on their claims, however, reasonable doubts about the application of collateral estoppel should be resolved against its use.[55]

## III.    DISCUSSION

Despite the tortured procedural history of this case, the Court finds that these appeals boil down to two dispositive issues: 1) whether Ashland was a party or in privity with a party to *Rosenberg I* and *II*; and 2) whether DVI Appellants and Ashland were intended beneficiaries of the NMI guaranty. The Court will address Appellants' numerous challenges to the Bankruptcy Court's application of collateral estoppel in five groups: 1) Ashland's status as a party or a privy to the Rosenberg bankruptcy; 2) Collateral estoppel effect of the real party in interest ruling; 3) Collateral estoppel effect of the novation ruling; 4) Appellants' opportunity to litigate their claims before the Florida Bankruptcy Court; and 5) Equitable grounds for denial of collateral estoppel effect.

### A.  Ashland's Status as a Party or a Privy to the Rosenberg Bankruptcy

Ashland contends that the Bankruptcy Court erred in holding that Ashland was collaterally estopped by *Rosenberg I* and *II* because Ashland was neither a party nor in privity with a party to those judgments. In order to be considered a party for collateral estoppel purposes, "a person must be subjected to the jurisdiction of the court by being served, appearing in court, or participating in the litigation."[56] Although who is a party to a judgment is usually self-evident, "complex proceedings," such as the Rosenberg bankruptcy, may render the

---

[55] *Witkowski v. Welch*, 173 F.3d 192, 206 (3d Cir. 1999) (citing *Kauffman v. Moss*, 420 F.2d 1270, 1274 (3d Cir. 1970)).

[56] *Kunkel's Estate v. United States*, 689 F.2d 408, 421 (3d Cir. 1982) (citing *Restatement (Second) of Judgments* § 34, cmt. a)).

determination of party status quite difficult.[57] In undertaking this difficult inquiry, the Court is guided by the bedrock principle that collateral estoppel is limited to parties and those in privity with parties in order to ensure "that everyone should have his own day in court."[58]

An involuntary bankruptcy proceeding is initiated by the filing of an involuntary bankruptcy petition by petitioning creditors who allege that they hold unpaid claims against a putative debtor.[59] On November 7, 2008, when the involuntary bankruptcy petition was initially filed, the petitioning creditors were DVI Appellants and DVI Funding.[60] Despite having sold its interest in the Master Leases to Ashland almost two years earlier, DVI Funding remained listed as a petitioning creditor when the first amended petition was filed.[61] On December 3, 2008, Rosenberg moved to dismiss the involuntary bankruptcy proceedings.[62] On April 7, 2009, Stephen Drobny and Robert Pinel, then counsel for all petitioning creditors, without seeking leave of court, filed a second amended petition that substituted Ashland for DVI Funding as a petitioning creditor.[63] Mr. Drobny, Mr. Pinel and Peter Levitt, who was also then counsel for all petitioning creditors, were subsequently listed as counsel for Ashland as a petitioning creditor on the docket. On April 15, 2009, Rosenberg moved to strike the second amended petition, alleging,

---

[57] *See* Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 4449 (1981).

[58] *See Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008) (internal quotations omitted).

[59] 11 U.S.C. § 303(a), (b).

[60] Joint Statement at ¶ 1.

[61] *Rosenberg I* at 830.

[62] Joint Statement at ¶ 4.

[63] Second Amended Involuntary Petition, no. 09-13196, *In re Rosenberg*, Doc. No. 46 (Bankr. S.D. Fla. Apr. 7, 2009).

*inter alia*, that the addition of Ashland as a petitioning creditor was procedurally improper[64] and Ashland's counsel responded on its behalf.[65] Without addressing that motion, on April 20, 2009, the Bankruptcy Court held a hearing on Rosenberg's motion to dismiss at which Mr. Drobny, Mr. Pinel, and Mr. Levitt appeared on behalf of all petitioning creditors.[66] Following the hearing, Ashland and DVI Appellants filed a motion for leave to file a third amended involuntary bankruptcy petition.[67]

On August 21, 2009, Judge Cristol granted Rosenberg's motion to dismiss in *Rosenberg I*. In the course of dismissing the involuntary bankruptcy petition, *Rosenberg I* reaches four alternative holdings with regard to Ashland: 1) Ashland was not a creditor of Rosenberg; 2) Ashland was not a real party in interest; 3) Ashland was not a creditor of Rosenberg because the Settlement Agreement constituted a novation; and 4) Ashland's claims against Rosenberg were contingent and subject to *bona fide* dispute.[68] *Rosenberg I*'s holdings with regard to Ashland were supported by detailed reasoning, such as the three bases for the conclusion that Ashland was not a creditor of Rosenberg: "(i) DVI Funding did not have a separate obligation owed to it by Rosenberg under the Limited Guaranty; (ii) Rosenberg had no direct obligation to Ashland Funding, and (iii) Ashland did no[t] acquire any obligation owed by Rosenberg to any person or entity, including in particular Lyon."[69] On August 31, 2009, Ashland and DVI Appellants

---

[64] Motion to Strike Second Amended Involuntary Petition, no. 09-13196, *In re Rosenberg*, Doc. No. 52 (Bankr. S.D. Fla. Apr. 15, 2009).

[65] Opposition to Alleged Debtor's Motion to Strike, no. 09-13196, Doc. No. 53 (Bankr. S.D. Fla. Apr. 15, 2009).

[66] Tr. of Apr. 20, 2009 Hearing, no. 09-13196, *In re Rosenberg*, Doc. No. 81 at 2 (Bankr. S.D. Fla. Apr. 23, 2009).

[67] *Rosenberg I* at 832.

[68] *Id.* at 840-48.

[69] *Id.* at 841.

collectively moved for rehearing of *Rosenberg I*.[70] Following Judge Cristol's denial of rehearing, Ashland and DVI Appellants filed a notice of appeal to the district court.[71]

During the Rosenberg bankruptcy proceedings, it is clear that Ashland had the opportunity to be heard on the merits of its claims and that all parties, including Ashland, proceeded on the understanding that Ashland was a party to *Rosenberg I*. Counsel appeared and argued on Ashland's behalf and Rosenberg's counsel responded to Ashland's claims. Upon consideration of Ashland's claims and Rosenberg's responses, *Rosenberg I* made detailed rulings on the merits of Ashland's claims. Ashland then had the opportunity to re-litigate the merits of its claims by moving for re-hearing and filing a notice of appeal. In sum, Ashland had its day in court in the Florida Bankruptcy Court and is bound by *Rosenberg I*.

The Court finds Ashland is also bound by the judgment of *Rosenberg II*. It is indisputable that Ashland was a party to *Rosenberg II*; not only did Ashland file a notice of appeal from *Rosenberg I*, but *Rosenberg II* specifies that Ashland is one of the appellants before the court in the course of substantially affirming *Rosenberg I*.[72] Ashland then made a strategic decision not to file a notice of appeal to the Eleventh Circuit and therefore Ashland was not a party to *Rosenberg III*. However, it is well-established that the finality of a lower court's judgment for collateral estoppel purposes "cannot be defeated by electing to forgo an available opportunity to

---

[70] Mot. for Rehearing or, Alternatively, to Alter or Amend Order Granting Motion to Dismiss, no. 09-13196, *In re Rosenberg*, Doc. No. 99 (Bankr. S.D. Fla. Aug. 31, 2009).

[71] Notice of Appeal, no. 09-13196, *In re Rosenberg*, Doc. No. 130 (Bankr. S.D. Fla. Oct. 18, 2010).

[72] *Rosenberg II* at 2, n. 2 (specifying that Ashland is one of the appellants).

appeal."[73] Thus, *Rosenberg II* is the final judgment with regard to Ashland and Ashland, as a party to *Rosenberg II*, is bound by the judgment.

Ashland's contention that it was not a party is based upon the Florida Bankruptcy Court's March 26, 2012 Order dismissing Rosenberg's claim for § 303(i) sanctions against Rosenberg. Following *Rosenberg I*, Rosenberg filed an adversary proceeding against Ashland and numerous other parties for damages arising from the filing of the involuntary bankruptcy petition.[74] Ashland and other defendants then moved to dismiss the § 303(i) sanctions claim.[75] Ashland now contends that in the process of dismissing Rosenberg's claim for § 303(i) sanctions against Ashland, the March 26, 2012 Order held that Ashland was not a party to *Rosenberg I*. The Court disagrees with this reading of the March 26, 2012 Order.

The March 26, 2012 Order did not hold that Ashland was not a party to *Rosenberg I*, but instead that Ashland was not a petitioning creditor for the purposes of § 303(i). The Order reasons that a § 303(i) claim may only be brought by a petitioning creditor and interprets the opinion in *Rosenberg I* to have dismissed the first amended involuntary petition, to which Ashland was not a party, and dismissed the motion to strike the second amended involuntary petition as moot.[76] Thus, the Order dismissed the § 303(i) claim as to Ashland on the technical ground that Ashland was not a petitioning creditor in the first amended petition. Although the parties to an involuntary bankruptcy proceeding are generally the petitioning creditors and the

---

[73] Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 4433 (1981).

[74] *Maury Rosenberg v. DVI Receivables, XIV, LLC, et al.*, Adv. No. 10-3812 (Bankr. S.D. Fla.).

[75] Memorandum Opinion Granting Mot. of Defs. Ashland Funding, LLC, Robert Brier, and BG Management Services, Inc.'s Motion to Dismiss, *Maury Rosenberg v. DVI Receivables, LLC, et al.*, Adv. No. 10-3812, Doc. No. 168 at 1-2 (Bankr. S.D. Fla. Mar. 26, 2012).

[76] *Id.* at 5, 7.

putative debtor, additional persons may become parties over the course of the proceedings.[77]

Moreover, even if the March 26, 2012 Order had held that Ashland was not a party, the March

26, 2012 Order would be irrelevant to the collateral estoppel effect of the district court's prior

judgment in *Rosenberg II*, because the Florida Bankruptcy Court was without power to alter the

district court's judgment. Thus, regardless of whether Ashland was ultimately held to be a

petitioning creditor, this Court finds that Ashland's appearance and litigation of its claims in

*Rosenberg I* and *Rosenberg II* rendered Ashland a party to those proceedings for purposes of

collateral estoppel. The Eastern District Bankruptcy Court's holding that Ashland is collaterally

estopped by *Rosenberg I* and *II* will therefore be affirmed.[78]

### B. Collateral Estoppel Effect of the Real Party in Interest Ruling

*Rosenberg I* and *II* held that DVI Appellants and Ashland were not real parties in interest

and therefore lacked standing to file the involuntary bankruptcy petition on two primary grounds:

1) the Rosenberg guaranty created an obligation to Lyon rather than to Appellants and 2)

Appellants are mere pass-through entities. Appellants contend that the Eastern District

---

[77] *See In re VII Holdings Co.*, 362 B.R. 663, 664 (Bankr. D. Del. 2007) (stating that request of non-petitioning creditors is before the court in an involuntary bankruptcy proceeding).

[78] Ashland raises two further arguments against the collateral estoppel effect of *Rosenberg I* and *II*: 1) that the second amended involuntary bankruptcy petition was a legal nullity; and 2) that Ashland is an unsuccessful intervenor in the Rosenberg bankruptcy. Both arguments are not supported by the authorities upon which Ashland relies.

Ashland cites *In re Ross*, 135 B.R. 230, 238-39 (Bankr. E.D. Pa. 1991), for the proposition that the determination that an involuntary bankruptcy petition was filed in bad faith renders any amended involuntary petitions a legal nullity. Instead, *In re Ross* stands for the rather more mundane proposition that a defect in an initial involuntary bankruptcy petition filed in bad faith cannot be cured through amendment. *Id.*

Ashland cites *Selective Way Ins. Co. v. Head*, 10-CIV-7029, 2011 WL 1459000, *5 n. 1 (E.D. Pa. Apr. 14, 2011), and *In re Mondelbatt*, 350 B.R. 1, 8 (Bankr. E.D. Pa. 2006) in support of its contention that Ashland is an unsuccessful intervenor in the Rosenberg bankruptcy and therefore not subject to collateral estoppel. Although these cases do in fact state that an unsuccessful intervenor is not subject to collateral estoppel, both cases concern the effect of an attempt to intervene pursuant to Fed. R. Civ. P. 24 under state law collateral estoppel principles. Because neither case addresses the effect of an amended involuntary bankruptcy petition filed without leave of court, neither case is relevant.

Bankruptcy Court erred in giving collateral estoppel effect to *Rosenberg I* and *II*'s holdings on the real party in interest issue because the issue is not identical in this case.

Federal Rule of Civil Procedure 17(a)(1) provides that "an action must be prosecuted in the name of the real party in interest." Therefore, a party that is not the real party in interest lacks standing to sue under Rule 17. The purpose of the Rule is to "protect a defendant against a subsequent action by the party actually entitled to recover, and to ensure that a judgment will have its proper final effect."[79]

Issues are identical for collateral estoppel purposes when "'the same general legal rules govern both cases and … the facts of both cases are indistinguishable as measured by those rules.'"[81] As a result, the facts of two cases need not be identical in every respect in order for the legal issues in the two cases to be identical for collateral estoppel purposes.[82] The standard is instead one of materiality; issues are not identical if any difference in the facts has "legal significance."[83] Pursuant to the Second Restatement of Judgments § 27, this materiality standard applies to differences in contractual language as well.[84]

---

[79] *White Hall Bldg. Corp. v. Profexray Division of Litton Industries, Inc.*, 387 F. Supp. 1202, 1206 (E.D. Pa. 1974).

[81] *Suppan*, 203 F.3d at 233 (quoting Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 4425 (1981)).

[82] Appellants rely upon a recent unpublished Third Circuit opinion for the proposition that identity of the issues requires that the "precise fact" at issue have been determined in the prior action. *Leyse v. Bank of America, N.A.*, 538 Fed. App'x 156, 159 (3d Cir. 2013) (internal quotations omitted). However, *Leyse* uses the "precise fact" language in the context of determining whether a fact has been determined by a summary affirmance, which inherently creates ambiguity as to what facts were considered by the appellate court. *Id.* at 159-60. *Rosenberg I, II* and *III* are not summary affirmances and the Court finds no ambiguity in the material facts determined by each decision. Thus, *Leyse* is not relevant to this case.

[83] *U.S. v. Stauffer Chemical Co.*, 464 U.S. 165, 172 (1984).

[84] *See Restatement (Second) of Judgments* § 27, cmt. c ("Preclusion ordinarily is proper if the question is one of the legal effect of a document identical in *all relevant respects* to another document whose effect was adjudicated in a prior action.") (emphasis added). Appellants contend that *United Indus. Workers, Service, Transp., Professional Gov't of N.A. of Seafarers' Int'l v. Gov't of Virgin Islands*, 987 F.2d 162, 169 (3d Cir. 1993) (hereinafter "Government of Virgin Islands"), stands for the proposition that varying contractual language

   i.   *Consideration of the NMI guaranty in the Rosenberg bankruptcy*

Appellants contend that the real party in interest issue cannot be identical because neither *Rosenberg I* nor *Rosenberg II* considered the legal effect of the NMI, as opposed to the Rosenberg, guaranty. Even if Judge Moore and Judge Cristol considered the NMI guaranty, Appellants further contend that interpretation of the NMI guaranty was not necessary for dismissal of the Rosenberg bankruptcy petition, and therefore the Rosenberg bankruptcy does not have collateral estoppel effect with regard to the NMI guaranty. Appellants' argument relies upon the rule that a determination must have been necessary to a prior court's judgment in order to be entitled to claim preclusive effect. This rule ensures that "preclusive effect is not given to determinations that did not receive close judicial attention."[85]

*Rosenberg I* extensively discussed the transactions between the parties, including the Settlement Agreement and its requirement that Rosenberg, NMI, and NMI Holding each execute and deliver a guaranty. Although *Rosenberg II* did not expressly reference the NMI guaranty, the district court reasoned that under the applicable Pennsylvania law, "all the documents in the Settlement Agreement should be read in conjunction with one another."[86] *Rosenberg II* went on to hold that *Rosenberg I* had considered all of these documents and that those documents supported the conclusion that the Rosenberg guaranty was owed to Lyon.[87] The Court therefore determines that the relevant question is not whether the NMI guaranty received sufficient judicial

---

automatically defeats identity of the issues. However, the holding of Government of the Virgin Islands is consistent with the materiality standard; the Government of the Virgin Islands court held that an arbitrator did not abuse his discretion by refusing to grant collateral estoppel effect when the contract at issue in the previous action contained "significantly different language." *Id.*

[85] *Jean Alexander*, 458 F.3d at 250 (internal quotation marks omitted).

[86] *Rosenberg II* at 11 (citing *W. United Life Assurance Co. v. Hayden*, 64 F.3d 833, 842 (3d Cir. 1995) (applying Pennsylvania law)).

[87] *Rosenberg II* at 11.

attention to be entitled to collateral estoppel effect, but whether the NMI guaranty is materially different from the Rosenberg guaranty.

ii.     *Interpretation of the NMI guaranty*

Appellants contend that section two of the NMI guaranty creates an obligation to DVI Appellants and Ashland as beneficiaries of the NMI guaranty that did not exist under section two of the Rosenberg guaranty. The interpretation of the NMI guaranty is governed by Pennsylvania law due to a choice of law clause.[88] Under Pennsylvania law, "the fundamental rule of contract interpretation is to ascertain the intent of the contracting parties."[89] The starting point for determining the parties' intent is the language of the contract itself. The parties' writing must be "interpreted as a whole, giving effect to all of its provisions."[90] If the contract's language, considered as a whole, is clear, then no extrinsic evidence of the parties' intent may be considered.[91]

Section two of the Rosenberg guaranty provides that Rosenberg "guarantees the full and prompt payment when due, whether by acceleration or otherwise, the sums identified as the 'Guaranteed Amount' for each Modified Lease on the attached Exhibit 'A' *to the Agent* …" Both guaranties identify Lyon as the Agent and therefore Appellants contend that the "to the Agent" language was essential to the determination in the Rosenberg bankruptcy that the Rosenberg guaranty was owed to Lyon. Section two of the NMI guaranty, however, provides that NMI and NMI Holding "guarantee the full and prompt payment when due, whether by acceleration or otherwise, of the sums identified as the 'Guaranteed Amount' for each Modified Lease on the

---

[88] NMI guaranty at § 13.

[89] *Lesko v. Frankford Hospital-Bucks County*, 15 A.3d 337, 342 (Pa. 2011) (internal quotations omitted).

[90] *Atlantic Richfield Co. v. Razumic*, 390 A.2d 736, 739 (Pa. 1978).

[91] *Lesko*, 15 A.3d at 342.

attached Schedule 'A' *due by the respective Lessee in favor of the respective Lessor …*" The lessees are the NMI LPs, and the Lessors are DVI Appellants and DVI Funding.[92] Appellants contend that section two of the NMI guaranty therefore creates an obligation to Appellants as beneficiaries of the NMI guaranty (and in Ashland's case, as successor in interest to DVI Funding).

Upon consideration of Appellants' argument, the Bankruptcy Court held that the NMI guaranty read as a whole created an obligation to Lyon. Read in isolation, the language relied upon appears to create an ambiguity as to whether the Rosenberg and NMI guaranties are materially different. However, any ambiguity as to whether the two guaranties are identical dissolves upon consideration of the guaranties as a whole. Most sections are word for word identical, with only grammatical differences caused by the fact that the NMI guaranty has two guarantors, whereas the Rosenberg guaranty has one. Three identical sections of the guaranties demonstrate the parties did not intend to confer upon Appellants an interest in the proceeds of either guaranty or the power to make any decisions regarding either guaranty: 1) the remainder of section two provides that Lyon as Agent shall have "sole but reasonable discretion" to demand payment of both guaranties;[93] 2) Section four provides that "any amounts received by the Agent from whatever source on account of the Obligations may be applied by the Agent toward the payment of such of the Obligations … as the Agent may from time to time elect, including any payments made by or for the account of Gurantor[s]," [94] and Appellants admit that this language means that Lyon was the party who would receive payment;[95] 3) Section 5(c) of both guaranties

---

[92] NMI guaranty Exh. A, B.

[93] NMI guaranty at § 2, Rosenberg guaranty at § 2.

[94] NMI guaranty at § 4, Rosenberg guaranty at § 4.

[95] Reply Br. of DVI Appellants at 20.

also affords Lyon with "sole discretion" to "release, waive, or compromise any obligation" under the guaranties.[96] Although Appellants contend that Appellants' lack of interest in or power over the guaranties is consistent with Lyon acting on their behalf as servicer, this contention is not supported by any evidence in the record.

In addition, another identical section provides direct evidence of the parties' intent to create an obligation to Lyon. Section 16 of the NMI guaranty and Section 17 of the Rosenberg guaranty each provide that the guarantors shall execute confessions of judgment. The purpose of a confession of judgment is to facilitate the collection of an obligation. Section 16 of the NMI guaranty and Section 17 of the Rosenberg guaranty are identical in specifying that the confessions of judgment executed by Rosenberg, NMI and NMI Holding were for "*the amount owed the Agent.*"[97] Thus, the two sections indicate that the parties intended to create an obligation to Lyon as agent in both guaranties. Upon consideration of the NMI guaranty as a whole, this Court finds that the parties clearly intended to create an obligation to Lyon that is identical in all material respects to the Rosenberg guaranty.

iii.    *Appellants' status as pass-through entities with no economic interest in the guaranty*

Both *Rosenberg I* and *Rosenberg II* also found that Appellants were not real parties in interest and lacked standing to file the involuntary bankruptcy petition because Appellants were mere pass-through entities with no remaining economic interest in the securitization transaction. *Rosenberg II* places central importance on the pass-through entities issue, stating "[u]ltimately, what this case comes down to is the fact that the petitioning creditors are nothing more than pass-through entities created for a limited purpose to complete a series of complex securitization

---

[96] NMI guaranty at § 5(c), Rosenberg guaranty at § 5(c).

[97] NMI guaranty at § 16, Rosenberg guaranty at § 17 (emphasis added).

transactions. They have no pecuniary interest, they do not receive any cash flow from the Master Leases, and they assigned all rights they may have had to the Trustee."[98] The Bankruptcy Court adopted Judge Moore's reasoning as "the foundation" of its real party in interest ruling.[99]

Appellants contend that despite their lack of economic interest, Appellants have standing to enforce the NMI guaranty because Appellants retain legal title to the Master Leases. Appellants contend that the Supreme Court's decision in *Sprint Communications Co., L.P. v. APCC Services, Inc.*, stands for the proposition that the courts "have always permitted the party with legal title alone [to a claim] to bring suit" even if that party has assigned its economic interest.[100]

However, the Court need not determine whether Appellants hold legal title to the Master Leases because Appellants' argument relies upon the assumption that Appellants are beneficiaries of the NMI guaranty. The NMI guaranty is the only alleged source of any claim by Appellants against NMI and NMI Holding. Thus, title to the Master Leases does not translate into title to a claim against NMI and NMI Holding unless the NMI guaranty creates an obligation to the holders of the Master Leases. Because the Court finds that the NMI guaranty creates an obligation only to Lyon, the Court finds that Appellants' claim to standing based upon title to the Master Leases is without merit.

**C. Collateral Estoppel Effect of the Novation Ruling**

DVI Appellants and Ashland contend that the Bankruptcy Court erred in finding the novation issue identical in *Rosenberg I* and *II* and the NMI bankruptcies before it. A novation or

---

[98] *Rosenberg II* at 12.

[99] Statement in Support at 15.

[100] *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 285 (2008).

substituted contract is a contract that provides for the "displacement and extinction of a valid contract [and] the substitution for it of a valid new contract."[101] A valid novation bars any party from bringing a lawsuit based upon the displaced contract.[102] In order to show a valid novation, the party asserting novation bears the burden to show that the parties intended to displace their prior contract through the alleged novation contract.[103]

*Rosenberg I* held that the Settlement Agreement constituted a novation that substituted a single obligation to Lyon for Rosenberg's previous obligations to DVI Appellants and Ashland.[104] *Rosenberg II* did not discuss the novation ruling, but stated that "this Court believes the Bankruptcy Court was thorough, fair, and correct" except as to the issue of whether the debts owed to Appellants were contingent.[105] Appellants now contend that the novation issue was not identical for two reasons: 1) the wording of the NMI guaranty preserved a separate obligation to each Lessor and 2) *Rosenberg II* did not expressly affirm *Rosenberg I*'s novation ruling and therefore there is no novation ruling from the Rosenberg bankruptcy entitled to collateral estoppel effect.

i.    *Whether the NMI guaranty preserves a separate obligation to each Lessor*

Appellants' first argument, like their argument that title to the Master Leases confers standing, is based upon the assumption that Appellants are beneficiaries of the NMI guaranty. In essence, Appellants contend that because each Appellant is a beneficiary of the NMI guaranty,

---

[101] *Buttonwood Farms, Inc. v. Carson*, 478 A.2d 484, 486 (Pa. Super. Ct. 1984) (internal quotations omitted).

[102] *See Nernberg & Laffey v. Patterson*, 601 A.2d 1237, 1239 (Pa Super. Ct. 1991).

[103] *Buttonwood Farms,* 478 A.2d at 486.

[104] *Rosenberg I* at 843-44.

[105] *Rosenberg II* at 9.

the Settlement Agreement did not substitute a single obligation to Lyon for separate obligations to each Appellant. Thus, in light of the Court's finding that the NMI guaranty creates a single obligation to Lyon, Appellants' argument is without merit.

ii.     *Waiver of the Argument that Rosenberg II Did Not Affirm the Novation Ruling of Rosenberg I*

Appellees contend that Appellants waived this argument by failing to raise it in the Bankruptcy Court. Appellees' waiver argument depends upon the well-established rule that an appellate court cannot consider an argument on appeal that was not raised in the bankruptcy court unless the appellate court is confronted with "exceptional circumstances."[106] In response to Appellees' claim of waiver, Appellant has not pointed to any evidence that this argument was raised in the Bankruptcy Court and the Court is not aware of any such evidence. Although *Rosenberg II* was decided in the nearly four-year interim between the filing of the motion for reconsideration and the briefing of the motion, Appellants were able to raise other arguments regarding *Rosenberg II* in their briefs on reconsideration.[107] The Court therefore finds that Appellants have waived the argument that *Rosenberg II* did not affirm the novation ruling of *Rosenberg I* and the Court will not consider this argument.

**D.  Appellants' Opportunity to Litigate Their Claims in the Florida Bankruptcy Court**

DVI Appellants and Ashland claim that they did not have a full and fair opportunity to litigate their claims in the Florida Bankruptcy Court because Rosenberg did not raise the real party in interest and novation issues until the April 20, 2009 hearing on Appellees' motion to dismiss. The Eastern District Bankruptcy Court held that Appellants had a full and fair

---

[106] *Wright v. Corning*, 679 F.3d 101, 105 (3d Cir. 2012).

[107] *See, e.g.*, Petitioning Creditors' Supplement To and  Memorandum of Law in Support of their Motion for Reconsideration, *In re National Medical Imaging, LLC*, no. 08-17351, Doc. No. 259 at 9-14 (Bankr. E.D. Pa. Feb. 6, 2014) (arguing that *Rosenberg II* required reconsideration of the collateral estoppel effect of *Rosenberg I*'s real party in interest holding).

opportunity to litigate their claims in the Florida Bankruptcy Court because the procedures satisfied the requirements of due process.[108] Specifically, the Bankruptcy Court found that Appellants' claims failed to reach the level of a due process violation because: 1) Appellants failed to object to Rosenberg's raising new issues at the hearing or immediately thereafter; 2) Appellants had adequate time to research the legal issues and write on these issues in the Florida Bankruptcy Court; 3) the parties had been litigating for almost a decade; and 4) Appellants agreed to the timeline for submitting post-hearing papers.[109] On appeal, Appellants claim that a full and fair opportunity to litigate in bankruptcy court requires all of the protections of an adversary proceeding rather than merely due process of law, namely the requirement that affirmative defenses be plead in the early stages of the proceeding.[110]

Appellees claim that Appellants also waived this argument through failure to raise it in the Eastern District Bankruptcy Court. Appellants have not pointed to any evidence that they raised this argument in the Bankruptcy Court and the Court is not aware of any such evidence. The Court therefore finds that Appellants have waived the argument that a full and fair opportunity to litigate a claim in bankruptcy court requires the full protections of an adversary proceeding.

---

[108] Eastern District Bankruptcy Dismissal at 16.

[109] *Id.* at 17.

[110] Opening Br. of DVI Appellants at 25-26 (citing *In re Mullarkey*, 536 F.3d 215, 226-27) (3d Cir. 2008)). *In re Mullarkey*, however, does not stand for this proposition. *In re Mullarkey* instead stands for the proposition that a bankruptcy court's ruling on a motion for relief from the automatic stay is not a final judgment entitled to collateral estoppel effect. *See In re Mullarkey* 536 F.3d at 226-27. Because the Florida Bankruptcy Court's dismissal with prejudice of Appellants' claims in *Rosenberg I* was indisputably a final judgment, *In re Mullarkey* is not relevant to this case.

For the reasons stated by the Bankruptcy Court, and due to the evidence in the record that Appellants had the opportunity to conduct extensive discovery, the proceedings before Judge Cristol were more than adequate to satisfy any reasonable conception of due process.

### E.  Equitable Grounds for Denial of Collateral Estoppel Effect

DVI Appellants and Ashland contend that the Bankruptcy Court should have exercised its equitable discretion to deny collateral estoppel effect to *Rosenberg I* and *II* based upon alleged judicial admissions by Rosenberg that the NMI guaranty was materially different from the Rosenberg guaranty. These alleged admissions occurred on three occasions: 1) Rosenberg's October 2, 2008, testimony in the Bucks County Court of Common Pleas; 2) Rosenberg's February 26, 2013, testimony during a jury trial on his § 303(i) sanctions claim; and 3) a brief filed on July 30, 2013, by Rosenberg's counsel in *U.S. Bank v. Rosenberg*, a related case before this Court. The Bankruptcy Court rejected Appellants' contention on the basis that "to the extent Rosenberg argued or testified that the Guarantees differed materially, he is wrong."[111] Appellants contend that the Bankruptcy Court should have made an "overriding fairness determination" that collateral estoppel was not warranted on the basis of the alleged judicial admissions.[112]

Although it is well-established in cases of offensive non-mutual collateral estoppel that trial courts may decline to grant collateral estoppel effect based upon such a fairness determination,[113] Appellants do not cite a single case from the Third Circuit holding that trial

---

[111] Statement in Support at 22.

[112] Opening Br. Of DVI Receivables Appellants at 30 (internal quotations omitted). Appellees contend that Appellants waived any argument regarding judicial admissions by failing to use that term before the Bankruptcy Court. However, given that Appellants referenced many of the same statements in support of their argument for denial of collateral estoppel on equitable grounds, *see* Appellees' Br. at 26 n. 14, the Court finds that the argument raised before the Bankruptcy Court was sufficiently similar to avoid waiver.

[113] *See Burlington Northern R.R. Co. v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227, 1232 (3d Cir. 1995) (stating that offensive non-mutual collateral estoppel is subject to residual fairness determination by trial judge).

courts have such authority when, as in this case, collateral estoppel is asserted defensively. Even if the Bankruptcy Court had discretion to deny collateral estoppel effect based upon Rosenberg's alleged judicial admissions, the equities of this hard-fought case do not provide any basis to conclude that granting collateral estoppel effect was an abuse of discretion.

## IV.    CONCLUSION

For the reasons stated above, the Court will affirm the Bankruptcy Court's orders in all respects. Despite the protracted and expansive litigation of this case, these consolidated appeals distill into two dispositive issues: 1) whether Ashland was a party to *Rosenberg I* and *II* and 2) whether the NMI guaranty creates an obligation to Appellants. Ashland's numerous opportunities to appear and litigate in the bankruptcy court in *Rosenberg I* and the district court in *Rosenberg II* demonstrate that Ashland was a party to those decisions. The overwhelming similarity of the NMI and Rosenberg guaranties, coupled with the evidence that Lyon had exclusive control over all material aspects of both guaranties and the direct textual evidence of Section 16 of the NMI guaranty that the parties intended the guaranties to create an obligation to Lyon, establishes that the NMI guaranty creates an obligation to Lyon rather than to Appellants. The Bankruptcy Court was therefore correct to give collateral estoppel effect to *Rosenberg I* and *II* in the NMI bankruptcies before it.

An appropriate order follows.